UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IN THE MATTER OF R.V.B,
a minor child under the age of 16,

GERMAN MUSSINI BUENAVER,

            Petitioner,

  -against-

MARIA MUNOZ VASQUEZ,

           Respondent.
------------------------------------------------------------X

MEMORANDUM AND ORDER

13-CV-4354

(Wexler, J.)

APPEARANCES:

    LAW OFFICE OF ANN MARQUEZ, ESQ.
    BY: ANN MARQUEZ, ESQ.
    Attorney for Petitioner
    535 Fifth Avenue, 4th Floor
    New York, New York 10017

    LAW OFFICES OF JEREMY D. MORLEY
    BY: NEIL J. SALTZMAN, ESQ.
    Attorney for Respondent
    230 Park Avenue, 10th Floor
    New York, New York 10169

WEXLER, District Judge:

Before the Court is a request by Petitioner German Mussino Buenaver ("Petitioner" or "Father") pursuant to 42 U.S.C. § 11607(b)(3) for payment of fees and expenses incurred in connection with his petition seeking the return of his child to Columbia.

## BACKGROUND

Petitioner brought this action pursuant to the International Child Abduction Remedies Act, 42 U.S.C. § 11601-11 (1998) ("ICARA"), which implements The Hague Convention on the

Civil Aspects of International Child Abduction ("the Hague Convention" or "Convention"), against Maria Munoz Vasuez ("Respondent" or "Mother"), seeking an order returning Petitioner's and Respondent's child, R.V.B. ("Child" or "R.V.B.") from New York to Columbia pursuant to the terms of the Hague Convention.

By order of this Court dated July 7, 2014, the petition was granted and the Child was ordered to be returned to Columbia. Familiarity with the underlying facts in this matter is assumed. See In the Matter of R.V.B., 2014 WL 3058250 (E.D.N.Y. 2014). The Petitioner then submitted this request for payment of expenses pursuant to 42 U.S.C. § 11607(b)(3).

## DISCUSSION

### I. The Expenses Requested

Petitioner Father seeks recovery of fees and costs in the amount of $30,089.00. In support of the request, Petitioner's counsel has submitted a retainer agreement and bill reflecting an attorney billing rate of $150.00 per hour with itemized legal expenses totaling $26,675.00. Petitioner also has submitted his own statement attesting to $3,414 in travel and other expenses, without any receipts, incurred by traveling to New York to file the petition and attend court appearances. See Affirmation in Support For Payment of Expenses by Anna Marquez, Esq. ("Marquez Aff."), Exhibits ("Exs.") A and B. The Court also notes that the Petitioner testified at trial that as a pilot, he was able to travel without incurring significant expenses, and here he seeks reimbursement of only $400 or $488 for each of the six trips he took to New York in connection with his petition.

In response, the Respondent Mother states that she is "impoverished." She works "off the books" cleaning apartments or any other job she can find, earns $450-500 per week, and is

waiting for a green card. See Affidavit of Maria Munoz Vasquez ("Vasquez Aff."), ¶ 2,7. Respondent states that she took out a loan of $20,000 to pay her attorneys' fees in this action, her lease is $1,000 per month, and that she does not have any savings account or any other significant assets. She includes a bank statement showing $44.05 in her checking account. Vasquez Aff. ¶¶ 3,4,6; Exhibit ("Ex.") A: Bank of America account statement. Respondent also states that she will be unable to travel to Columbia to see her daughter if she has no funds. Id., ¶ 8.

II.     Legal Principles

The Hague Convention states that a court granting a petition to return a child pursuant to its terms shall order the respondent to pay necessary expenses. Specifically, 42 U.S.C. § 11607(b)(3) states that:

> (3) Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

In Ozaltin v. Ozaltin, 708 F.3d 355 (2d Cir. 2013), the Second Circuit addressed the award of expenses, noting that 42 U.S.C. § 11607(b)(3) shifts the burden to the losing respondent to show "why an award of 'necessary expenses' would be 'clearly inappropriate.'" Id., 708 F.3d at 375 (citing 42 U.S.C. § 11607(b)(3) and Sealed Appellant v. Sealed Appellee, 394 F.3d 338, 346 (5th Cir. 2004)). The Circuit found that "a prevailing petitioner in a return action is presumptively entitled to necessary costs, subject to the application of equitable principles by the district court. Absent any statutory guidance to the contrary, the appropriateness of such costs depends on the same general standards that apply when 'attorney's fees are to be awarded to

-3-

prevailing parties only as a matter of the court's discretion.'" Id., (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)). "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the [relevant] considerations." Id. (internal quotation marks omitted in the original).

In Ozalitan, the Second Circuit vacated the award of full expenses against the respondent mother who was directed to return the child, finding there was a reasonable basis[1] for the mother to remove the child to the United States, and that the father may have engaged in forum shopping that ran contrary to purpose of Hague Convention and possibly increased the difficulty and cost of resolving the dispute. Id., at 376. Thus, the Second Circuit held that the language in 42 U.S.C. § 11607(b)(3) that expenses "shall be awarded" is "discretionary in nature and is governed by general equitable principles." Id., at 378; see also Hollis v. O'Driscoll, 739 F.3d 108, 113 (2d Cir. 2014) (the District Court is responsible for determining the costs, if any, to be assessed).

III. Disposition of the Motion

The Court here finds that it would be "clearly inappropriate" to direct that the Respondent Mother in this case pay the Petitioner Father $30,089.00. The testimony during the trial was consistent with the "impoverishment" the Respondent claims in her Affidavit. She testified during the trial that she overstayed her visa, works "off the books," has had various jobs during her time in New York, and is awaiting her green card, which affects her ability to have more steady employment. The Court has no reason to question her statement that she has no

---

[1] While this mistake in law was not a defense to the return of the child, it is a equitable factor when considering whether costs should be awarded. Id., at 375-376.

-4-

significant assets, or that she borrowed money to pay her attorney to defend this matter. Based on these facts, the Court finds that the Respondent Mother has met her burden of establishing that an award of $30,098.00 is "clearly inappropriate" here.

The Court recognizes that the purpose of the Hague Convention is to "'deter[ ] child abductions by parents who attempt to find a friendlier forum for deciding custodial disputes.'" Ozaltin v. Ozaltin, 708 F.3d at 376 (quoting Abbott v. Abbott, 560 U.S. 1, 130 S.Ct. 1983, 1996, *dissent* at 1998, 176 L.Ed.2d 789 (2010)), and the fee shifting provision of 42 U.S.C. § 11607(b)(3) furthers that purpose. Yet consideration of the financial status of the respondent is appropriate. See In re One Infant Child, Slip Copy, 2014 WL 704037 (S.D.N.Y. 2014) (consideration taken of the dire financial status of the respondent parent when reducing the expenses sought by successful petitioner parent) (citations omitted); Poliero v. Centenaro, 2009 WL 2947193, *22 (E.D.N.Y. 2009), aff'd, 373 Fed. App'x 102 (2d Cir.2010) (court denies petitioner's request for attorneys' fees since respondent has no assets, is not employed and relies solely on the money that petitioner gives her). Courts in other jurisdictions have similarly considered the financial condition of the respondent in determining whether an award is "clearly inappropriate." See Hirts v. Hirts, 152 Fed. Appx. 137, 139 (3d Cir. 2005) (denying any award against respondent mother was not an abuse of discretion where she had no assets, few or no prospects of employment due to her immigration status, and was living in a homeless shelter at the time of the trial); Rydder v. Rydder, 49 F.3d 369, 373-74 (8th Cir. 1995) (reducing fee award to $10,000 due to respondent's financial condition); Mendoza v. Silva, 987 F.Supp.2d 910, 917 (N.D.Iowa 2014) (finding that respondent's financial circumstances make it "clearly inappropriate" to award any attorneys' fees, but one-half of claimed expenses granted);

Montero-Garcia v. Montero, 2013 WL 6048992, *6 (W.D. N.C. 2013) (denying award where mother had no assets or ability to pay, or prospects for employment, and shifting the award to her would significantly impact the child, pushing them further into poverty); Kufner v. Kufner, 2010 WL 431762, *5–6 (D.R.I. 2010) (recommending a further 25% reduction in award based on respondent's inability to pay); Berendsen v. Nichols, 938 F.Supp. 737, 739 (D.Kan. 1996) (the fee award reduced by 15% in light of respondent's financial status and support of the children).

The Court finds that Respondent has met her burden of establishing that awarding Petitioner $30,089.00 is "clearly inappropriate." The Court finds instead that equitable considerations direct that the award be significantly reduced to 20% of that amount, or $6,018.00, to reimburse Petitioner for the fees and expenses he was forced to incur to have his Child returned to Columbia.

## CONCLUSION

For the reasons stated above, Petitioner's request for fees and expenses in the amount of $30,089.00 is denied, and Petitioner is granted an award in the amount of $6,018.00. The Clerk of the Court is directed to close this matter.

SO ORDERED.

s/Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
December  , 2014